***E-FILED - 1/15/09***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAY STEWART MILLER, | ) | No. C 06-3551 RMW (PR) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT; |
| | ) | DIRECTING PARTIES TO |
| MICHAEL L. FRIEDMAN, et al., | ) | LOCATE UNSERVED |
| | ) | DEFENDANT'S |
| Defendants. | ) | REPRESENTATIVE |
| | ) | (Docket No. 19) |

Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that medical staff at the High Desert State Prison and Correctional Training Facility ("CTF") were deliberately indifferent to his medical needs. Defendants Friedman, Garcia, and Dayalan move for summary judgment, contending that they were not deliberately indifferent to plaintiff's medical needs, and that they are entitled to judgment as a matter of law. (Defs.' Mot. for Summ. J., P. & A. ("MSJ").) Plaintiff has filed an opposition. Defendants have filed a reply.

After a review of the record, the court concludes that plaintiff has not shown evidence that precludes summary judgment. Accordingly, the court GRANTS defendants' motion for summary judgment. Further, the court directs plaintiff and defense counsel to locate defendant Krietler's representative.

**STATEMENT OF FACTS**[1]

In 1994, prior to incarceration, plaintiff was seen at Santa Barbara Medical Foundation Clinic where a neurologist diagnosed him with decompression sickness with persisting symptoms at the upper thoracic level. (Plaintiff's Ex. #6.) In 1996, his diagnosis remained unchanged, however, the doctor did notice some improvement. (Id.). In 1997, another doctor diagnosed him with thoracic spine disorder with neurological deficit and muscle spasms. (Id.)

While at High Desert State Prison in 1999, plaintiff submitted a grievance form in which he complained that his injury required daily medication of Baclofen and Ibuprofen and requested a transfer to a medical facility. (Plaintiff's Opp., Ex. #1.) In 2001, defendant Dr. Krietler terminated plaintiff's prescriptions for medication, but after one of plaintiff's administrative appeals was granted, Dr. Krietler refilled plaintiff's prescriptions. (Plaintiff's Opp., p. 2.)

On October 29, 2002, plaintiff was transferred from High Desert State Prison to CTF. (Defs.' MSJ, p. 2.) On November 15, 2002, Dr. Sinnaco prescribed Tylenol and Parafon, a muscle relaxant. (Id., p. 2.) Although plaintiff requested Baclofen, a muscle relaxant, Dr. Sinnaco did not prescribe it because it was "not a formulary prescription medication at CTF." (Defs.' MSJ, Declaration of J. Chudy, p. 2.) Prison records indicate that doctors at CTF, including defendants, have prescribed both a pain reliever and a muscle relaxant to treat plaintiff's symptoms from November 15, 2002, through the date plaintiff filed this suit. (Defs.' MSJ, p. 3) On December 15, 2003, plaintiff's back examination by prison medical staff revealed a normal result. (Defs.' MSJ, Ex. A, p. 7.) On January 26, 2004, Dr. Dayalan reported seeing no evidence of muscle spasm, plaintiff was able to walk freely without any difficulty and demonstrated no neurological deficit. (Id. at p. 6.) On March 16, 2004, Dr. Garcia ordered x-rays of plaintiff's spine. (Id.) Those results indicated "no significant skeletal lesions." (Defs.' MSJ, Ex. A, p. 10.) Dr. Friedman confirmed those results. (Defs.' MSJ, p. 3.)

Prison medical records indicate that defendant Dr. Dayalan prescribed both a pain reliever and muscle relaxant on August 16, 2004, and muscle relaxant on December 27, 2005;

---

[1] Unless otherwise noted, all facts presented below are undisputed.

1 January 4, 2006; January 18, 2006; February 1, 2006; and December 20, 2006. (Defs.' MSJ, p. 3.) Plaintiff himself requested and received 12 refills of pain reliever and muscle relaxants from November 2004 through January 2006. (Id.)

Plaintiff alleges defendants have not prescribed adequate medication for his back injury, resulting in plaintiff's suffering daily pain since being incarcerated. (Amended Complaint, p.3.) Plaintiff asserts that he received medications only after filing grievances and medical requests. (Plaintiff's Opposition to Defs.' MSJ, p. 2.) Plaintiff further states that he received his pain medications at a delayed rate, sometimes varying from two weeks to three months from the dates the medications were prescribed. (Id., p. 3.)

Plaintiff asserts that Dr. Sinnaco (not a party to this case) diagnosed him with osteoarthritis, which is not consistent with a spinal cord injury. (Id.) Plaintiff also alleges that defendants' prescription of pain relievers and muscle relaxants were insufficient to treat his serious medical condition of a spinal cord injury, as diagnosed by doctors prior to his incarceration. (Id., p. 4.) Plaintiff also states that defendants Dr. Garcia and Dr. Friedman both ignored plaintiff's previous medical records and his attempt to explain his spinal cord injury. (Id., p. 6-7.)

## DISCUSSION

A.  Motion for Summary Judgment

   1.  Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp v. Catrett, 477 U.S. at 323.

2. Plaintiff's Claim

Plaintiff claims that defendants have been deliberately indifferent to his serious medical needs. Defendants assert that they are entitled to summary judgment as a matter of law because the undisputed facts demonstrate that defendants were not deliberately indifferent to plaintiff's needs in treating his back pain with medication.[2] Plaintiff responds that the defendant doctors were deliberately indifferent, primarily due to their failure to diagnose and treat his injury as a spinal cord injury and the delay in receiving his medications.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of

---

[2] It appears defendants are not disputing the seriousness of plaintiff's medical needs.

two elements:  the seriousness of the prisoner's medical need and the nature of the defendant's response, i.e., whether it is deliberate indifference, to that need.  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

          a.      Failure to diagnose and treat spinal cord injury

Plaintiff claims that Dr. Friedman ordered an x-ray of his back even though plaintiff explained that the x-ray would not show evidence of his spinal cord injury.  Plaintiff also notes that Dr. Garcia agreed with Dr. Friedman's analysis of the x-ray results that demonstrated no skeletal lesions.  Plaintiff asserts, therefore, that by conducting the x-rays, Dr. Garcia and Dr. Friedman unnecessarily delayed his treatment for proper medication.  Plaintiff also asserts that Dr. Dayalan incorrectly stated, "you're healed," and noted no evidence of injury.  Plaintiff appears to generally assert that defendants failed to properly treat his spinal cord injury.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994) (equating standard with that of criminal recklessness).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference."  Id.  Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom.  See McGuckin, 974 F.2d at 1060.

However, a claim of a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment.  See Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference.  See Toguchi, 391 F.3d at 1058, 1059-60.  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course

of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. Id. at 1058.

Plaintiff submitted medical records obtained prior to his incarceration in which he was diagnosed with decompression sickness with persisting symptoms at the upper thoracic level in 1994 (Plaintiff's Ex. #6), and then thoracic spine disorder with neurological deficit and muscle spasms in 1997. (Id.) Plaintiff was prescribed carbamazepine[3] in an attempt to suppress his symptoms. (Id.)

Both plaintiff and defendants submitted pages of his Patient Profile indicating the medication, dates, and amounts of medication prescribed to him while incarcerated from 2002 through 2008. (Plaintiff's Ex. 1; Defs.' MSJ, Ex. A.) Plaintiff's complaints to prison officials at CTF indicate that he wished to be prescribed Baclofen[4], a muscle relaxant, which he received while at High Desert State Prison, and tylenol to manage his pain. (Plaintiff's Ex. 4-C.) While at CTF, defendant doctors as well as non-defendant doctors have prescribed him a variety of

---

[3] "Carbamazepine is used to prevent and control seizures. It is known as an anticonvulsant or anti-epileptic drug. It is also used to relieve one type of nerve pain (trigeminal neuralgia). This medication works by reducing excessive nerve signals in the brain and restoring the normal balance of nerve activity." http://www.webmd.com/

[4] "Baclofen is used to treat muscle tightness and cramping (spasms) caused by certain conditions such as multiple sclerosis and spinal cord injury/disease. It works by relaxing the muscles. Decreasing spasms helps reduce pain and stiffness, improves your ability to move around, and lets you do more of your daily activities." http://www.webmd.com/

1  medications: tylenol, parafon[5], robaxin[6], and naproxen[7].   (Defs.' MSJ, Ex. A.)

2  Here, plaintiff's allegation regarding the failure to diagnose and treat a spinal cord injury
3  appear to amount to nothing more than a difference of opinion in diagnosis and treatment.
4  Plaintiff fails to provide evidence that defendant doctors' course of treatment was "medically
5  unacceptable." Toguchi, 391 F.3d at 1058; see also McGuckin v. Smith, 974 F.2d 1050, 1059
6  (9th Cir. 1992) ("Mere negligence in diagnosing or treating a medical condition, without more,
7  does not violate a prisoner's Eighth Amendment rights."). The medical records submitted
8  demonstrate that defendants prescribed a variety of muscle relaxants and pain relievers. (Defs.'
9  MSJ, Ex. A, p. 11-65.) Even if defendants had diagnosed plaintiff with a spinal cord injury as he
10 wished, plaintiff fails to demonstrate how the defendants' prescription of alternative muscle
11 relaxants was "medically unacceptable" to prescribing Baclofen and that they chose this course
12 of treatment in conscious disregard of an excessive risk to plaintiff's health. See Toguchi, 391
13 F.3d at 1058.

14 That Dr. Garcia and Dr. Friedman ordered an x-ray of his back does not demonstrate
15 "deliberate indifference," nor does plaintiff demonstrate that such course of treatment was
16 "medically unacceptable." Further, plaintiff's grievance record show that during the two-week
17 period in which defendant doctors were awaiting x-ray results, plaintiff was prescribed tylenol

---

[5] "This medication is used to treat pain and discomfort from muscle injuries such as strains, sprains, and spasms. It provides temporary relief and is usually used along with rest, physical therapy, and other treatments (e.g., nonsteroidal anti-inflammatory medication). This medication relaxes tight muscles and relieves pain, cramping, and stiffness so you can move around more and get back to doing your daily activities. Chlorzoxazone belongs to a class of drugs called muscle relaxants. It is thought to work on the nerves to relieve muscle pain. It may also relieve pain by calming your nervous system." http://www.webmd.com/

[6] "This medication relaxes muscles. It is used along with rest and physical therapy to decrease muscle pain and spasms associated with strains, sprains or other muscle injuries." http://www.webmd.com/

[7] "Naproxen is used to relieve pain and swelling (inflammation) from various conditions. It is used to treat headaches, muscle aches, backaches, tendonitis, dental pain, and menstrual cramps. It also reduces pain, swelling, and joint stiffness caused by arthritis, bursitis, and gout attacks. Reducing these symptoms helps you do more of your normal daily activities. This medication is known as a nonsteroidal anti-inflammatory drug (NSAID)." http://www.webmd.com/

and a muscle relaxant, thereby contradicting plaintiff's allegation that the x-ray unnecessarily delayed his treatment. (Defs.' MSJ, Ex. A, p. 7.) In addition, plaintiff does not assert what Dr. Garcia or Dr. Friedman should have done differently, or that their treatment was in conscious disregard of an excessive risk to plaintiff's health. See Toguchi, 391 F.3d at 1058.

That Dr. Dayalan stated, "you're healed," and noted no evidence of injury also does not demonstrate "deliberate indifference." See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). Plaintiff fails to attribute any specific date to Dr. Dayalan's statement or diagnosis and, furthermore, the record demonstrates that Dr. Dayalan prescribed both a pain reliever and muscle relaxant on August 16, 2004, and muscle relaxant on December 27, 2005; January 4, 2006; January 18, 2006; February 1, 2006; and December 20, 2006. (Defs.' MSJ, p. 3.)

The court finds that plaintiff's submissions lack particularity sufficient to preclude summary judgment. See Keenan, 91 F.3d at 1279. Accordingly, viewing the facts in the light most favorable to plaintiff, the evidence does not demonstrate that the defendants' failure to treat or diagnose plaintiff's injury as a spinal cord injury violated his Eighth Amendment right.

          b.     <u>Delay in receiving medications</u>

Plaintiff also alleges that he did not receive medications at times up to three months from the date it was prescribed or requested. Without more, such claim is also insufficient to make out a violation of the Eighth Amendment. <u>Id.</u>

Plaintiff submits copies of inmate grievance forms in which he asserted that he required daily medication and his repeated medical request filings were unanswered. Regarding plaintiff's allegation regarding delays in receiving medication, the only specific dates he proffers in his Opposition are from November 9, 1999 through December 6, 1999; December 16, 1999 through December 22, 1999; January 21, 2000 through April 11, 2000; June 10, 2000 through June 14, 2000; and June 17, 2000 through June 20, 2000. (Plaintiff's Opp., p. 3.) These dates pertain to the period when plaintiff was incarcerated at High Desert State Prison and not at CTF, where defendants are employed. Accordingly, such delays cannot be attributed to any wrongdoing by defendant doctors.

Further, plaintiff fails to show a culpable state of mind on the part of defendants or

1  proximate cause.  For example, plaintiff admits that although defendants did prescribe him
2  medication, at times, plaintiff did not receive those medications until later.  Noticeably, plaintiff
3  does not and cannot attribute such delays to defendants.  The Patient Profile submitted by
4  plaintiff and annotated by plaintiff presumably in an effort to indicate delays between
5  prescriptions point to dates in which medications were prescribed by non-defendant doctors.
6  (Plaintiff's Ex. #2.)  In addition, much of the allegations regarding delays in receiving
7  medication appear to arise from either other medical staff and/or the pharmacy rather than
8  defendants.  In other words, plaintiff does not suggest defendants were the proximate cause of
9  the delays of which he complains. Regardless, the volume and content of the medical records and
10  the frequency of plaintiff's medical requests and visits contradict plaintiff's subjective opinion
11  that defendants themselves purposefully ignored or failed to reasonably respond to plaintiff's
12  pain or medical needs.  See McGuckin, 974 F.2d at 1060.

13  The court finds that plaintiff's submissions lack particularity sufficient to preclude
14  summary judgment.  See Keenan, 91 F.3d at 1279.  Viewing the facts in the light most favorable
15  to plaintiff, the evidence does not demonstrate that the defendants were deliberately indifferent
16  to plaintiff's serious medical needs and delayed his medication in violation of plaintiff's Eighth
17  Amendment right.

18  Accordingly, the court GRANTS defendants' motion for summary judgment and
19  DISMISSES defendants Friedman, Garcia, and Dayalan from this action.

20  B.     Unexecuted service on Dr. Krietler

21  Although plaintiff's amended complaint also names Dr. Krietler as a defendant, who was
22  employed at High Desert State Prison as a defendant, Dr. Krietler was not served because he
23  died prior to the commencement of this suit.  Plaintiff was made aware of Dr. Krietler's death
24  and the fact that service was unexecuted pursuant to a letter dated February 29, 2008 (docket no.
25  12) from Deputy Attorney General Craig Modlin and this court's June 12, 2008 order (docket
26  no. 18).

27  Here, plaintiff's complaint has been pending for over 120 days, and thus, absent a
28  showing of "good cause," is subject to dismissal without prejudice as to the unserved defendant.

Order Granting Defendants' Motion for Summary Judgment; Directing Parties to Locate Unserved Defendant's Representative
P:\PRO-SE\SJ.Rmw\CR.06\Miller551grantmsj.wpd      9

See Fed. R. Civ. P. 4(m).  Although a plaintiff who is incarcerated and proceeding in forma pauperis may rely on service by the Marshal, such plaintiff "may not remain silent and do nothing to effectuate such service;" rather, "[a]t a minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent defects of which [he] has knowledge."  Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987).  If the Marshal is unable to effectuate service through no fault of his own, for example, because plaintiff failed to provide sufficient information or because the defendant is not where plaintiff claims, and plaintiff is informed, plaintiff must seek to remedy the situation or face dismissal.  See  Walker v. Sumner, 14 F.3d 1415, 1421-22 (9th Cir. 1994), overruled on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

Because the Marshal is unable to effectuate service through no fault of his own, Dr. Krietler has not and cannot be served, and plaintiff has not provided sufficient information to allow the Marshal to locate and serve Dr. Krietler's estate or representative, plaintiff must remedy the situation or face dismissal of his claims against said defendant without prejudice.  See id.

When defendants' counsel informed the court and plaintiff of Dr. Krietler's death on February 29, 2008, counsel made no mention of knowledge of a successor or representative.  More than ten months have passed.  Defendants' counsel is directed to conduct a reasonable investigation into the status of Dr. Krietler's estate.  If counsel is able to obtain the name and address of the representative of Dr. Krietler's estate, counsel shall serve a notice of suggestion of death on both the representative and plaintiff and file a proof of service reflecting the name and address of the person served.  Cf. Fed. R. Civ. P. 25.  If counsel is unable to obtain information about a successor or representative, counsel shall file a declaration in which he describes the efforts made to comply with this order.  In either case, defendants' counsel is directed to file one or the other within **forty-five days** of the filing date of this order.

Simultaneously, plaintiff must provide the court with Dr. Krietler's estate's legal representative's accurate and current location such that the Marshal is able to effect service upon him.  Failure to do so within **sixty days** of the date this order is filed will result in the dismissal

of the claims against Dr. Krietler under Rule 4(m).

## CONCLUSION

1.  Defendants' motion for summary judgment is GRANTED. (Docket no. 19.) Defendants Friedman, Garcia, and Dayalan are DISMISSED as parties to this action.

2.  Defendant's counsel shall make a reasonable investigation into the status of Dr. Krietler's estate and, if a representative of the estate is discovered, shall serve a suggestion of death of Dr. Krietler in accordance with Rules 4 and 25 on the representative. Within **forty-five days** after the filing date of this order, defendant's counsel shall file either a proof of service reflecting proper service of the suggestion of death on the representative of Dr. Krietler's estate or, if counsel is unable to effect such service, a declaration concerning his efforts to comply with this order.

3.  Plaintiff must provide the court with accurate and current location information for Dr. Krietler such that the Marshal is able to effect service upon them. <u>If plaintiff fails to provide the court with the accurate and current locations, within **sixty (60) days** of the date this order is filed, plaintiff's claims against Dr. Krietler will be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure; the dismissal will be without prejudice to plaintiff refiling a complaint with such information.</u>

This order terminates docket no. 19.

IT IS SO ORDERED.

DATED: __1/13/09_____

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge